IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MONICA F.,[1]                                          Case No. 3:22-cv-00795-SB

               Plaintiff,                    **OPINION AND ORDER**

     v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

               Defendant.

_____

**BECKERMAN, U.S. Magistrate Judge.**

     Monica F. ("Plaintiff") brings this appeal challenging the Commissioner of the Social

Security's ("Commissioner") denial of her applications for Disability Insurance Benefits ("DIB")

and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), and the parties have

consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). For the

_____

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party.

PAGE 1 – OPINION AND ORDER

reasons explained below, the Court affirms the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

I.    PLAINTIFF'S APPLICATIONS

Plaintiff was born in September 1967, making her forty-nine years old on September 14, 2017, her alleged disability onset date. (Tr. 77-78, 94-95.) Plaintiff is a high school graduate who has past relevant work experience as a nurse assistant and nurse practitioner. (*Id.* at 31.) In her applications for benefits, Plaintiff alleges disability due to lumbar stenosis with neurogenic

claudication, cervical pain with radiculopathy, right hip fracture with radicular symptoms, post-traumatic stress disorder ("PTSD"), anxiety, attention-deficit/hyperactivity disorder ("ADHD"), depression, chronic right shoulder pain, asthma, and anemia. (*Id.* at 78, 95.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on December 20, 2019, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 93, 110, 131, 149, 169-70.) Plaintiff and a vocational expert ("VE") appeared by telephone and testified at an administrative hearing on September 9, 2020. (*Id.* at 43-76.) On February 3, 2021, the ALJ issued a written decision denying Plaintiff's applications. (*Id.* at 22-32.)

On January 18, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-4.) Plaintiff now seeks judicial review of the ALJ's decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id*. at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 22-32.) At step one, the ALJ determined that Plaintiff had engaged in substantial gainful activity during October 2019 and from January 2020 through "at least March 2020." (*Id.* at 24.) At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: "degenerative disc disease of the lumbar spine, lumbar spinal stenosis, cervical radiculopathy, and right hip labral tear/right hip arthrosis[.]" (*Id.* at 25.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 26.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these limitations: (1) Plaintiff can occasionally balance, kneel, crouch, crawl, and stoop, (2) Plaintiff can lift or carry ten pounds frequently and twenty pounds occasionally, (3) Plaintiff can stand or walk for thirty minutes at a time for four hours per day and sit thirty minutes at a time for up to four hours, (4) Plaintiff can never climb ladders, ropes, or scaffolds, and can seldom climb stairs, and (5) Plaintiff can occasionally use her lower extremities for operation of foot controls. (*Id.*) At step four, the ALJ concluded that Plaintiff is

unable to perform her past relevant work. (*Id.* at 30-31.) At step five, the ALJ determined that

Plaintiff was not disabled because a significant number of jobs existed in the national economy

that she could perform, including work as a ticket seller, production assembler, assembler of

small products, and an assembler of electronic accessories. (*Id.* at 32.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ made six errors: (1) the ALJ improperly

rejected Plaintiff's subjective symptom testimony; (2) the ALJ improperly rejected medical

opinion evidence; (3) the ALJ failed to find that Plaintiff had a severe somatic symptom disorder

at step two; (4) the ALJ improperly relied on VE testimony; (5) the ALJ failed to discuss the lay

witness testimony; and (6) the ALJ did not fulfil her duty fully to develop the record.[2]

As explained below, the Court finds that the ALJ's decision is free of harmful legal error

and supported by substantial evidence in the record, and therefore affirms the Commissioner's

decision.

## I.    SUBJECTIVE SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to

which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664,

678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective

---

[2] The Commissioner argues that Plaintiff did not present her claims of error with sufficient specificity to invoke the Court's review. (Def.'s Br. at 3-4.) While the Court agrees that Plaintiff's arguments are not always clear, she presents them with enough specificity so that the Commissioner was able reasonably to rebut her arguments and the Court is able to evaluate them. Further, the Court affords Plaintiff leniency because she is self-represented. *See Seals v. L.A. Unified Sch. Dist.*, 797 F. App'x 327, 327 (9th Cir. 2020) ("[P]ro se litigants should be treated with 'great leniency' when evaluating compliance with 'the technical rules of civil procedure.'") (citation omitted).

medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

**B.    Analysis**

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 27, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ met that standard here.

An ALJ may discount a claimant's symptom testimony based on activities that are incompatible with the claimant's testimony regarding the severity of her symptoms. *See Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) (explaining that "[i]nconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination"); *Garrison*, 759 F.3d at 1016 (stating that a claimant's activities have "bearing on [his or her] credibility" if the reported "level of activity" is "inconsistent with [the claimant's] claimed limitations"). Notably, however, there must be a meaningful inconsistency between the claimant's daily activities and symptom testimony. *See Harris v. Kijakazi*, No. 21-35136, 2022 WL 1262011, at *1 (9th Cir. Apr. 28, 2022) (holding that the ALJ committed

harmful error in discounting the claimant's symptom testimony, and explaining that the claimant's "limited daily activities were not meaningfully inconsistent with her symptom testimony").

"An ALJ may [also] consider any work activity, including part-time work, in determining whether a claimant is disabled[.]" *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (citation omitted). In *Bray*, for example, the ALJ discounted the claimant's "statement that she [was] incapable of walking more than half a block without stopping to catch her breath and using a nebulizer or inhaler, that she [was] unable to lift twenty pounds, and that she [could not] carry as much as ten pounds 'very far.'" 554 F.3d at 1226. The Ninth Circuit held that substantial evidence supported the ALJ's decision to discount the claimant's testimony regarding the severity and "characterization of her symptoms." *Id.* at 1226-27. In so holding, the Ninth Circuit explained that the ALJ made specific findings that "belie[d] [the claimant's] claim of debilitating respiratory illness." *Id.* at 1227. Those findings included the ALJ's "not[e] that . . . [the claimant] recently worked as a personal caregiver for two years, and ha[d] sought other employment since then[.]" *Id.*

In discounting Plaintiff's subjective symptom testimony, the ALJ considered Plaintiff's work history and daily activities in evaluating the intensity, persistence, and limiting effects of her symptoms. (Tr. 28.) Specifically, the ALJ considered Plaintiff's ability to work one day a week as a nurse practitioner and her ability to perform medium exertion work as a "stores laborer" twenty-four hours a week. (*Id.*) With respect to activities of daily living, the ALJ discussed Plaintiff's ability to do housework, cook, shop for groceries, drive, and care for her two sons with special needs and her father who suffered from a stroke. (*Id.*) The ALJ acknowledged Plaintiff's testimony that she worked ten-hour days when she started in October

2019, until a treating chiropractor provided a work release in April 2020. (*Id.*, citing Tr. 1112.) The chiropractor indicated that Plaintiff could work twenty-four hours per week with a lifting limit of twenty to forty pounds, but did not provide any standing, walking, or sitting limitations. (*Id.*) The ALJ determined that Plaintiff's "ability to work [twenty-four] hours a week at an occupation exceeding light exertion is inconsistent with a complete inability to work." (*Id.* at 28.) The ALJ acknowledged that in December 2019, Plaintiff alleged having difficulty standing for more than ninety minutes and lifting over forty pounds, but the ALJ explained that the RFC accounted for Plaintiff's allegations. (*Id.*)

Plaintiff takes issue with the ALJ discounting her symptom testimony based on her work activity. (Pl.'s Br. at 2, 5, 8-9.) Plaintiff emphasizes that although she was standing for ten hours per day and lifting up to seventy pounds, she tries not to lift more than forty pounds and she has called out multiple times due to her back and hip pain. (*Id.* at 9.) However, Plaintiff fails to identify any inconsistency between her subjective symptom testimony and the RFC. As the ALJ explained, she gave Plaintiff the benefit of the doubt and determined that Plaintiff could lift only ten pounds frequently and twenty pounds occasionally, and that she can stand or walk only thirty minutes at a time for four hours per day. (Tr. 26.) In other words, the RFC limits Plaintiff to activity levels far below her own allegations about her limitations. It was reasonable for the ALJ to conclude that Plaintiff's ability to perform medium exertion work as a stores laborer undermined her alleged inability to work at any job.

Plaintiff also argues that it was improper for the ALJ solely to rely on objective medical evidence to discredit her subjective symptom testimony. (Pl.'s Br. at 9-10.) Plaintiff is correct that an ALJ may not rely solely on a lack of supporting medical evidence to discount a claimant's testimony. *See Valdez v. Berryhill*, 746 F. App'x 676, 677 (9th Cir. 2018) (noting that

an "ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason" (citing *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005))). However, here the ALJ properly discounted Plaintiff's subjective symptom testimony based on her work history and activities of daily living, and therefore the ALJ did not rely solely on a lack of objective medical evidence. (Tr. 28.)

For these reasons, the Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's subjective symptom testimony. *See Jones v. Saul*, 818 F. App'x 781, 781-82 (9th Cir. 2020) (holding that the ALJ provided clear and convincing reasons for discounting the claimant's testimony and thus "[a]ny error in the ALJ's additional reasons for discounting [the claimant's] symptom testimony [were] harmless"); *Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's discounting of the claimant's testimony because the ALJ "provided at least one clear and convincing reason supported by substantial evidence" for doing so).

## II.    MEDICAL OPINION EVIDENCE

### A.    Applicable Law

As the Commissioner acknowledges (*see* Def.'s Br. at 5-6), the new regulations apply here because Plaintiff filed her application after March 27, 2017.[3] *See Woods v. Kijakazi*, 32 F.4th 785, 787-92 (9th Cir. 2022) (observing that "[t]he new regulations apply to [a claimant's Social Security case if] she filed her claim on or after March 27, 2017," and that the new regulations displace the "irreconcilable" and "incompatible" specific and legitimate reasons standard); *see also Petritz v. Kijakazi*, No. 22-35155, 2022 WL 17592191, at *1 (9th Cir. 2022)

---

[3] The Ninth Circuit recently held that the new regulations are valid under the Social Security Act and Administrative Procedures Act. *See Cross v. O'Malley*, 89 F.4th 1211, 1215-17 (9th Cir. 2024).

(explaining that "the standard under the new regulations . . . [did] not apply to [the claimant's] case because [he] filed his application for benefits before [March 27,] 2017" (citing *Woods*, 32 F.4th at 789)).

Under the new regulations, "'[t]he most important factors' that [an ALJ] considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Woods*, 32 F.4th at 791 (quoting 20 C.F.R. § 404.1520c(a)).[4] Supportability refers to "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence,'" *id.* at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)), and consistency refers to "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). An ALJ "must 'articulate . . . how persuasive' [she] finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [she] considered the supportability and consistency factors' in reaching [his] findings.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(b), 404.1520c(b)(2)).

The new regulations reflect that an ALJ is not required to make specific findings regarding a medical source's relationship with the claimant, i.e., "the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's record." *Id.* (quoting 20 C.F.R.

---

[4] The ALJ correctly applied the new and parallel regulations applicable to SSI claims, which are codified at 20 C.F.R. § 416.920c. (*See* Tr. 19); *see also Reynolds v. Kijakazi*, No. 21-35672, 2022 WL 4095381, at *1 (9th Cir. Sept. 7, 2022) (applying the new regulations in evaluating claims for DIB and SSI (citing 20 C.F.R. § 416.920c and *Woods*, 32 F.4th at 791-92)); *Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *1 (9th Cir. Dec. 27, 2022) (noting that the new, parallel regulations for DIB and SSI claims are "codified at 20 C.F.R. [parts] 404 [and] 416," respectively (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017))).

§§ 404.1520c(b)(2), 404.1520c(c)(3)(i)-(v)). Nor is an ALJ required to make findings regarding

specialization or "other factors that tend to support or contradict a medical opinion[, such as the

medical source's] familiarity with the other evidence in the claim or . . . understanding

of . . . disability program[] policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(b)(2),

404.1520c(c)(4)-(5).

       If, however, an ALJ finds that medical opinions "about the same issue are both equally

well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ] will

articulate how [she] considered the . . . factors in paragraphs (c)(3) through (c)(5)." *Id.*

§ 404.1520c(b)(3). Those factors are the medical source's relationship with the claimant,

specialization, and facts that tend to support or contradict a medical source's opinion. *Id.*

§ 404.1520c(c)(3)-(5).

       A district court reviews the ALJ's evaluation of a medical opinion for substantial

evidence. *See Woods*, 32 F.4th at 787 ("Now, [under the new regulations,] an ALJ's decision,

including the decision to discredit any medical opinion, must simply be supported by substantial

evidence."); *id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or

treating doctor's opinion as unsupported or inconsistent without providing an explanation

supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at

*1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's

evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at

789)).

    **B.**    **Analysis**

       Plaintiff fails to demonstrate that the ALJ committed harmful error in discounting the

medical opinion evidence from multiple medical professionals.

///

1.    **Herbert Lim, M.D. ("Dr. Lim")**

a.    **Dr. Lim's Opinion**

On August 25, 2020, Dr. Lim filled out a treating source statement for Plaintiff. (Tr. 1154-57.) Dr. Lim indicated that he began treating Plaintiff in 2017. (*Id.* at 1154.) Dr. Lim opined that Plaintiff has lumbar spinal stenosis resulting in pseudoclaudication manifested by chronic nonradicular pain. (*Id.* at 1155.) Dr. Lim opined that Plaintiff met the criteria of Listing 1.04 Lumbar Spinal Stenosis, based on chronic nonradicular pain and weakness resulting in an "inability to ambulate effectively." (*Id.*) Dr. Lim also opined that Plaintiff had manipulative limitations and difficulty concentrating, and that she would be absent from work at least sixteen hours per month due to her impairments. (*Id.* at 1156.)

b.    **The ALJ's Treatment of Dr. Lim's Opinion**

The ALJ found Dr. Lim's assessment to be partially persuasive. (*See id.* at 29, citing Exhibit 26F, i.e., Tr. 1154-57.) The ALJ found Dr. Lim's opinion that Plaintiff's lumbar spinal stenosis meets the criteria of Listing 1.04 not persuasive. (*Id.* at 29.) The ALJ explained that "while there is MRI evidence of lumbar spinal stenosis, there is no evidence of inability to ambulate effectively." (*Id.*) The ALJ further explained that Dr. Lim's opinion regarding Plaintiff's inability to ambulate effectively is not supported by his own assessment that Plaintiff can stand and walk for thirty minutes at a time for four hours out of an eight-hour day. (*Id.*, citing Exhibit 22F-11, i.e., Tr. 1072.) The ALJ also found that this opinion is inconsistent with Plaintiff's work activity and treatment records documenting ability to ambulate freely. (*Id.*)

The ALJ found that Dr. Lim's opinion regarding Plaintiff's functional limitations was somewhat persuasive. (*Id.* at 29.) The ALJ explained that Dr. Lim's exertional limitations and restriction to occasional balancing, stooping, kneeling, and crawling were persuasive. (*Id.*) The ALJ noted that these exertional limitations were supported by Dr. Lim's treatment notes, which

reflect persistent complaints of hip and back pain and difficulties staying on her feet for ten hours per day at work, and were "consistent with imaging studies and treatment record which reflect tenderness and limited range of motion but full strength in the upper and lower extremities." (*Id.*, citing Exhibits 23F-8, 4F-65, 69, 88, 8F-4, 79, 80, 11F-18, 17, i.e., Tr. 1089, 571, 575, 594, 642, 717-18, 859-60.)

### c.    Disposition

Plaintiff fails to demonstrate that the ALJ committed harmful error in discounting Dr. Lim's opinion.

As a threshold matter, Plaintiff argues that the ALJ erred in rejecting the opinion of Dr. Lim, but simply reiterates the ALJ's findings and doe not point to any actual error. (Pl.'s Br. at 30, 33-36.) The Commissioner explains that the ALJ appropriately addressed the supportability and consistency of Dr. Lim's opinion. (Def.'s Br. at 6-7.) As discussed above, the ALJ addressed that Dr. Lim's opinion that Plaintiff satisfied Listing 1.04 was not supported by his own assessment that Plaintiff can stand or walk for thirty minutes at a time for four hours out of an eight-hour workday. (Tr. 29.) With respect to the consistency factor, the ALJ thoroughly explained how Dr. Lim's assessment of Plaintiff's manipulative limitations was inconsistent with the treatment record, which shows Plaintiff did not report any difficulty using her hands or lifting forty pounds, and she maintained a full range of motion in her upper extremities. (Tr. 30, 393.)

The Court concludes that the ALJ did not commit harmful error in discounting Dr. Lim's opinion, and that substantial evidence supports the ALJ's evaluation. *See Kitchen v. Kijakazi,* 82 F.4th 732, 740 (9th Cir. 2023) ("Under the revised regulations, an ALJ need only provide 'an explanation supported by substantial evidence'" (quoting *Woods*, 32 F.4th at 792)).

///

///

###### 2. David Rheaume, D.C. ("Dr. Rheaume")

###### a. Dr. Rheaume's Opinion

On August 27, 2020, Dr. Rheaume wrote a one-page letter on behalf of Plaintiff

regarding her treatment at Crosswinds Chiropractic. (Tr. 1158.) Dr. Rheaume indicated that

Plaintiff had been treated at Crosswinds Chiropractic for several motor vehicle accidents. (*Id.*)

The last motor vehicle accident for which Plaintiff was treated was on October 16, 2019, and her

treatment ended on May 8, 2020. (*Id.*) Dr. Rheaume stated that he could not assess Plaintiff's

mental limitations given that he is a chiropractor with no expertise. (*Id.*) However, Dr. Rheaume

opined that Plaintiff "cannot do strenuous labor or heavy lifting." (*Id.*) Dr. Rheaume further

opined that activities such as sitting, standing, and walking are within Plaintiff's physical ability.

(*Id.*)

###### b. The ALJ's Treatment of Dr. Rheaume's Opinion

The ALJ stated that Dr. Rheaume's assessment "is vague but not inconsistent with the

residual functional capacity finding." (*Id.* at 30.)

###### c. Disposition

Plaintiff fails to demonstrate that the ALJ committed harmful error in discounting Dr.

Rheaume's opinion. As an initial matter, the ALJ did not "reject" Dr. Rheaume's opinion as

Plaintiff contends. (Pl.'s Br. at 30; Tr. 30.) The ALJ simply found that Dr. Rheaume's opinion

that Plaintiff cannot do strenuous labor or heavy lifting but can partake in activities such as

sitting and walking was "vague." (Tr. 30.) In any event, the ALJ acknowledged that Dr.

Rheaume's opinion is consistent with the RFC for a limited range of light work. (*Id.*) Therefore,

Plaintiff has failed to demonstrate that the ALJ committed harmful error in evaluating Dr.

Rheaume's opinion.

///

PAGE 14 – OPINION AND ORDER

**3.    Richard Sogn, M.D. ("Dr. Sogn") and Frank Colistro Ph.D. ("Dr. Colistro")**

Plaintiff asserts that the ALJ erred in "rejecting" Dr. Sogn and Dr. Colistro's medical opinions. (Pl.'s Br. at 30.) Plaintiff states that she established care with Dr. Sogn in 2011 and was diagnosed with ADHD and generalized anxiety. (*Id.* at 3.) Plaintiff also explains that Dr. Sogn was "aware that [she] was seeing Dr. Colistro for counseling diagnosed with PTSD, anxiety and counseling." (*Id.*)

Plaintiff does not cite to any records showing that either of these mental health professionals offered a medical opinion in this case. (Pl.'s Br. at 30, 33-36.) Regarding Dr. Sogn, the record includes Exhibit 25F titled as a "Treating Source Statement," but the document is simply a letter from Dr. Sogn explaining that he was unable to locate Plaintiff's medical chart while working from home due to COVID-19. (Tr. 1153.) Dr. Sogn explained that he faxed Plaintiff's complete medical record several times in the past, and those treatment notes are in the record. (*Id.*, *see also id.* at 441-43, 1049-59.)

Further, the record does not contain any records or statements from Dr. Colistro. The only mention of Dr. Colistro in the record is a "Notice of Requested Evidence" in which Plaintiff's counsel informed the ALJ that counsel requested medical records from Plaintiff's therapist, Dr. Colistro. (*Id.* at 379-80.)

The ALJ reasonably relied on available records of Plaintiff's psychological examinations within the relevant period, which demonstrate that Plaintiff's mental functioning is consistent with performing basic work tasks with regular work breaks. (*Id.* at 25-26, 29, 841.) In the absence of any medical opinions in the record from Drs. Sogn or Colistro, Plaintiff has failed to demonstrate that the ALJ erred.

///

PAGE 15 – OPINION AND ORDER

### 4.    Daniel Scharf, Ph.D. ("Dr. Scharf")

#### a.    Dr. Scharf's Opinion

On December 6, 2018, Dr. Scharf performed a psychodiagnostic examination on Plaintiff. (*Id.* at 837.) Plaintiff was referred for this examination by Disability Determination Services. (*Id.*) Dr. Scharf opined that Plaintiff was able to understand and remember instructions. (*Id.* at 841.) Dr. Scharf also opined that Plaintiff is able to sustain concentration and attention but would likely have problems with persistence in her attention after two to three hours. (*Id.*) Dr. Scharf suggested that Plaintiff is able to engage in appropriate social interaction. (*Id.*)

#### b.    The ALJ's Treatment of Dr. Scharf's Opinion

The ALJ found that Dr. Scharf's opinion was persuasive. (*Id.* at 29.) The ALJ explained that Dr. Scharf's opinion was supported by his findings upon examination including Plaintiff's normal speech, thought process, and affect. (*Id.*) The ALJ also stated that Dr. Scharf's opinion is supported by his exam findings showing that Plaintiff exhibited logical thought process, intact memory, and demonstrated only mild disruption in her concentration and attention. (*Id.*) With respect to the consistency factor, the ALJ found that Dr. Scharf's opinion was consistent with Plaintiff's lack of mental health treatment other than medications, as well as her work activity. (*Id.*) The ALJ found Dr. Scharf's opinion "consistent with the non-severe mental finding," and that "the evidence does not support any limitations in persistence or attention." (*Id.*)

#### c.    Disposition

Plaintiff argues that the ALJ erred by discounting Dr. Scharf's opinion.[5] (Pl.'s Br. at 10-11, 14, 18, 31-32.) Plaintiff takes issue with the fact that Dr. Scharf conducted a one-hour exam,

---

[5] Plaintiff asserts that the ALJ "failed to consider the opinion under the appropriate factors and failed to identify either clear and convincing evidence or specific and legitimate bases supported by substantial evidence in the record in rejecting the opinion[.]" (Pl.'s Br. at 32.)

arguing that a one-hour exam is not sufficient to discredit multiple treating physicians and

psychologists who treated Plaintiff's mental health from 2011 to 2018. (*Id.* at 10.) Plaintiff relies

on cases applying the old standards for weighing medical opinion evidence. (*See id.*)

Specifically, Plaintiff states "generally, more weight is given to the opinion of a treating

physician than the opinion of those who do not actually treat the claimant." (*Id.*, citing *Garrison*,

*759 F.3d at 1012*; *C.F.R § 404.1527(c)*.) Plaintiff further argues that because Dr. Scharf's

opinion is contradicted by the opinions of her treating doctors including Dr. Sogn and Dr.

Colistro, the ALJ may only reject Dr. Scharf's opinion by providing specific and legitimate

reasons that are supported by substantial evidence. (Pl.'s Br. at 10.) In support, Plaintiff again

cites to cases applying the old standard for weighing medical opinion evidence, stating "to reject

[the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and

convincing reasons that are supported by substantial evidence." (*Id.*, citing *Ryan v. Comm'r*, *528

F.3d 1194, 1198 (9th Cir. 2008)*.) As discussed above, Drs. Colistro and Sogn did not provide

medical opinions in support of Plaintiff's disability applications. The only medical opinions

addressing Plaintiff's mental impairments are from Dr. Scharf and the state agency psychological

consultants, who also found that Plaintiff's mental impairments are non-severe. (Tr. 85, 102.)

The ALJ explained that the consultants' opinions are well supported and consistent with Dr.

Scharf's assessment. (*Id.* at 30.)

      The Court finds that the ALJ appropriately addressed the supportability and consistency

of Dr. Scharf's opinion, and the ALJ's opinion is supported by substantial evidence in the record.

As a result, the ALJ did not err.

---

However, as discussed above, these are no longer the standards for evaluating medical opinion
evidence.

III.    **THE ALJ'S STEP TWO SEVERITY FINDING**

A.    **Applicable Law**

At step two, "[a]n impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on [the claimant's] ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). The Ninth Circuit has recognized that step two is "a de minimis screening device used to dispose of groundless claims[.]" *Id.* at 687 (simplified).

A claimant bears the burden of demonstrating that an ALJ's step-two error was harmful. *See Howland v. Saul*, 804 F. App'x 467, 469 (9th Cir. 2020) (explaining that the claimant bears "the burden of demonstrating harmful error" and that the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination" (quoting *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded by regulation on other grounds as recognized in Davis v. Kijakazi*, No. 21-3541, 2022 WL 2072656, at *1 (9th Cir. June 9, 2022))). If the ALJ resolved step two in the claimant's favor—as here—a claimant must show two things to demonstrate harmful error.

First, a claimant must demonstrate that the ALJ considered the impairments in the RFC determination. *See Havens v. Kijakazi*, No. 21-35022, 2022 WL 2115109, at *1 (9th Cir. June 13, 2022) ("[E]ven if the [step-two] determination was in error, it was harmless because the ALJ considered these conditions among [the] claimed impairments in the overall [RFC] determination."); *Fowler v. Kijakazi*, No. 20-36016, 2021 WL 5823704, at *1 (9th Cir. Dec. 8, 2021) ("[A]ny error was harmless because the ALJ still resolved step two in [the claimant's] favor and considered all medically determinable impairments (severe and non-severe) at the later steps.") (citation omitted).

Second, and importantly, a claimant asserting that an ALJ's step-two findings resulted in harmful error must identify and detail what limitations the ALJ should have included in the RFC determination. *See Delgadillo v. Kijakazi*, No. 20-56211, 2022 WL 301548, at *3 (9th Cir. Feb. 1, 2022) (rejecting the claimant's argument that the ALJ "failed to consider the impact of [certain] functional impairments" because the claimant's "brief . . . fail[ed] to 'detail what other physical limitations' should have been included in the RFC based on these considerations, which overlap with points the ALJ expressly considered" (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009))); *Youngblood v. Berryhill*, 734 F. App'x 496, 498 (9th Cir. 2018) ("[The claimant] fails to identify . . . limitations that the ALJ should have incorporated into the RFC. As a result, [the claimant] has not argued the issue specifically and distinctly as required to invoke the Court's review.") (simplified); *see also Cramer v. Berryhill*, 706 F. App'x 385, 385-86 (9th Cir. 2017) ("Any error in failing to specifically discuss [certain impairments] at step two is harmless because the ALJ considered all the evidence in assessing [the RFC], and [the claimant] fails to identify any medical evidence supporting additional functional limitations that the ALJ did not consider." (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007))).

### B.    Analysis

Plaintiff argues that the ALJ erred by failing to find her somatoform disorder a severe impairment at step two. (Pl.'s Br. at 30.) However, the ALJ found that Plaintiff suffers from other severe physical impairments and thus resolved step two in her favor. (Tr. 25.) Accordingly, Plaintiff must demonstrate harmful error, but has not done so here.

Plaintiff does not point to any evidence in the record—her own symptom testimony, a medical opinion, medical records, or otherwise—that suggests she has a somatic symptom disorder. In her applications, Plaintiff did not allege disability due to a somatic symptom

disorder. (*Id.* at 78, 95.) Plaintiff offers no evidence that she was diagnosed with a somatic

symptom disorder or that any mental health conditions cause additional limitations for which the

ALJ did not account. In fact, the only mental impairments Dr. Scharf noted were ADHD, anxiety

disorder, and depressive disorder. (*Id.* at 840.) Dr. Scharf opined that Plaintiff could understand

and remember instructions, sustain concentration and attention for two to three hours at a time,

and engage in appropriate social interaction. (*Id.* at 841.) This is consistent with the ALJ's RFC

findings.

Given Plaintiff's failure to detail a more restrictive limitation with supporting evidence

that the ALJ should have included in the RFC, the Court finds that Plaintiff has failed to meet her

burden of demonstrating that the ALJ committed harmful error at step two. *See Delgadillo*, 2022

WL 301548, at *3 ("[The claimant] also contends that the ALJ failed to consider the impact of

additional functional impairments . . . in determining her RFC. Her brief, however, fails to 'detail

what other physical limitations' should have been included in the RFC based on these

considerations, which overlap with points the ALJ expressly considered." (citing *Valentine*, 574

F.3d at 692 n.2)); *Joseph-Harvey E. v. Comm'r of Soc. Sec.*, No. 21-cv-5771-TLF, 2022 WL

1448711, at *2 (W.D. Wash. May 9, 2022) ("Plaintiff has not shown how the ALJ's step

two consideration of neuropathy and HIV, and decision that these were non-severe impairments,

caused any harmful error."); *Valente M. v. Kijakazi*, No. 2:21-cv-00015-MKD, 2022 WL

909356, at *7 (E.D. Wash. Mar. 28, 2022) ("There are no medical opinions in the record that

include limitations related to Plaintiff's mental impairments. Plaintiff also did not allege

disability due to his mental impairments and did not testify that he had any specific limitations

due to his mental impairments. Plaintiff has not met her burden in demonstrating the ALJ

harmfully erred at step two. Plaintiff is not entitled to remand on these grounds.") (citation omitted).

## IV.    VOCATIONAL EXPERT TESTIMONY

Plaintiff asserts that the VE's testimony that there were "no readily available jobs" for Plaintiff and that "there is no job in the national data base [sic] based on the criteria for the hypothetical questions posed by [the] ALJ" demonstrates that there is no work in the national economy that she can perform. (Pl.'s Br. at 7, 25.) Plaintiff is mistaken.

Once a claimant satisfies her burden of proof at steps one through four, the Commissioner bears the burden of proof at step five. *See Lockwood v. Comm'r Soc. Sec.*, 616 F.3d 1068, 1071 (9th Cir. 1989). The Commissioner "can meet this burden by propounding to a vocational expert a hypothetical that reflects all the claimant's limitations." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989)). At step five, an ALJ is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [a claimant] can do." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

Plaintiff argues that the ALJ ignored VE testimony claiming there are "no readily available jobs" that she can perform. However, the VE testified that Plaintiff did not have skills readily transferable to *sedentary* occupations. (Tr. 75.) This testimony is immaterial given that the ALJ found Plaintiff had the RFC to perform a reduced range of *light work*. (*Id.* at 26.) The ALJ asked hypothetical questions to the VE about the relevant RFC limitations, and the VE determined that there were three light exertional level occupations, totaling more than 370,000 jobs in the national economy, that someone with Plaintiff's RFC could perform. (*Id.* at 428.) Given that the VE identified a significant number of jobs in the national economy that Plaintiff could perform, the Commissioner met her burden at step five.

V.    **LAY WITNESS TESTIMONY**

Plaintiff argues that the ALJ erred by failing to address the lay witness testimony

provided by three individuals. (Pl.'s Br. at 7, 25.) There is no dispute the ALJ did not explicitly

address the lay witness testimony. (*Compare* Pl.'s Br. at 7, 25, *with* Def.'s Br. at 10-12,

reflecting that the Commissioner does not dispute Plaintiff's assertion.) The Commissioner

argues that because the ALJ properly discounted Plaintiff's subjective symptom testimony,

which was similar to the lay witness statements, any error in failing to give germane reasons for

rejecting lay witness testimony was harmless. (Def.'s Br. at 10-11, citing *Molina*, 674 F.3d at

1119.)

"Under the 2017 regulations, the ALJ is not 'required to articulate how [she] considered

evidence from nonmedical sources' using the same criteria required for the evaluation of medical

sources." *Christopher K. v. Comm'r Soc. Sec.*, 649 F. Supp. 3d 1041, 1049 (D. Or. 2023)

(quoting 20 C.F.R. § 404.1520c(d)). "Under the new regulations, however, the ALJ must still

articulate their assessment of lay witness statements." *Id.* (citing *Tanya L.L. v. Comm'r Soc. Sec.*,

526 F. Supp. 3d 858, 869 (D. Or. 2021)); *see also Janet M. v. Comm'r Soc. Sec.*, No. 6:21-cv-

00725-AR, 2023 WL 3318777, at *6 (D. Or. May 9, 2023) (explaining the same).

Here, given the overlap between Plaintiff's and the lay witness testimony, and the ALJ's

clear and convincing reasons for discounting Plaintiff's testimony, the ALJ's failure specifically

to address the lay witness testimony was harmless error. *See De Mello v. Kijakazi*, No. 22-35111,

2022 WL 17583054, at *1 (9th Cir. Dec. 12, 2022) ("[A]ny claimed error was harmless because,

given the similarity between [the lay witness's] report and [the claimant's] testimony, the lay

testimony did not alter the ultimate nondisability determination.") (simplified); *Jacob v.

Berryhill*, 756 F. App'x 709, 711-12 (9th Cir. 2018) (noting that the ALJ provided clear and

convincing reasons for discounting the claimant's testimony, which "overlap[ped] substantially

with that of [the lay witness]," and holding that "any error was harmless" in discounting the lay witness testimony because the ALJ's reasons for rejecting the claimant's testimony applied with equal force to the lay witness); *Burkett v. Berryhill*, 732 F. App'x 547, 553 (9th Cir. 2018) (holding that the ALJ "did not err by declining to discuss" lay witness testimony, and that any error was harmless because the lay "testimony described the same limitations as [the claimant's properly discounted] testimony") (simplified).

## VI.    RECORD DEVELOPMENT

Plaintiff argues that the ALJ failed fully to develop the record. (Pl.'s Br. 11, 33.) Plaintiff appears to refer to her declining health following the ALJ's decision. (*Id.* at 14, 22.) As explained below, the Court finds that the ALJ had no duty further to develop the record.

### A.    Applicable Law

An "ALJ has 'an independent duty to fully and fairly develop the record,' but this duty is triggered only if 'there is ambiguous evidence or . . . the record is inadequate to allow for proper evaluation of the evidence.'" *Harmon v. Saul*, 850 F. App'x 485, 487 (9th Cir. 2021) (quoting *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) and *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)). If the record includes "specific and sufficient evidence" to evaluate the claim, however, the record is neither ambiguous nor inadequate, and the ALJ does not err by failing to obtain additional records. *See Gurin v. Saul*, 842 F. App'x 45, 48 (9th Cir. 2021) (rejecting the claimant's argument that the ALJ failed fully to develop the record by not obtaining certain mental health records because "the record provided specific and sufficient evidence, and the record was therefore neither ambiguous nor inadequate"); *Harmon*, 850 F. App'x at 487 (holding that the ALJ did not err by failing to obtain records when "the absence of the . . . records did not make the record ambiguous or inadequate," and noting that the absent

records did not prejudice the claimant because it was "unlikely" the records would have benefitted the claimant in the proceedings).

### B.    Analysis

Plaintiff asserts that the ALJ failed fully to develop the record. In support, Plaintiff discusses various treatments and worsening conditions that arose after the ALJ's decision in January 2021. (Pl.'s Br. 14, 22.) For example, Plaintiff discusses that she took time off work in 2021 and 2022 due to her symptoms and limitations. (*Id.* at 14, 22, 34.) She also references a medical assessment that took place in April 2021. (*Id.* at 14.) Evidence of these post-decision events are not in the administrative record, and the ALJ's decision is based on the record provided to the agency. Plaintiff may file a new application based on any worsening symptoms or new limitations, but because Plaintiff failed to demonstrate that the record is ambiguous or inadequate, the Court finds that the ALJ did not err by failing to consider records not in the administrative record or by failing to obtain additional records. *See Gurin*, 842 F. App'x at 48 (finding that "remand is unjustified when the later-submitted evidence relates to a period after the ALJ's decision").

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and not supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 25th day of March, 2024.

HON. STACIE F. BECKERMAN
United States Magistrate Judge